# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RODNEY HIGGS, | * |
| Plaintiff | * |
| v. | *   CIVIL NO. JKB-10-2379 |
| AIRFRAME MODIFICATION PROF. MECHS., INC., | * |
| Defendant | * |

## MEMORANDUM

### I. Background

Plaintiff Rodney Higgs *pro se* filed this lawsuit contending his former employer, Airframe Modification Professional Mechanics, Inc. ("AMPM"), discriminated against him on the basis of race by terminating him on April 21, 2009. (Compl. 1-2, ECF No. 1.) Higgs used a form complaint that asked, in item number 6, for the Plaintiff to state the facts of his claim. In the corresponding blanks, Higgs wrote: "All in writing with the Maryland EEOC; Maryland Dept. of Labor and also in my possession." (*Id.* 2.) AMPM filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. (ECF No. 10.)

Higgs, in response, filed a document in which he related several incidents that he presumably believed to support his allegation of employment discrimination. (ECF No. 14.) He attached to it several items: (1) a record from the District Court of Maryland, Washington County, dated December 5, 2008, and pertaining to an incident involving Leonardo Mercado and Higgs; (2) a Fact Finding Report from the State of Maryland's Department of Labor, Licensing, and Regulation, printed on June 12, 2009; (3) three illustrations presumed to be the ones to

which Higgs referred in his response, second paragraph; and (4) additional papers apparently relating to an appeal of an adverse determination on Higgs's claim for unemployment benefits. (*Id.*)

AMPM filed a reply that was also labeled as a "renewed motion to dismiss." (ECF No. 15.) However, attached to it were several documents. These included a signed statement by Larry Anderson (apparently, a former coworker of Higgs), a declaration signed under the penalty of perjury by Charles Chapman (President of AMPM), a copy of an authorization signed by Higgs for the release of information to AMPM, documents relating to Higgs's claim for unemployment benefits, a copy of the decision by the Maryland Commission on Human Relations ("MCHR") pertaining to Higgs's complaint of employment discrimination, and a copy of the letter from the MCHR deputy director denying reconsideration of its decision. (*Id.* Exs. A-E.)

Because the last filing had attributes of a motion for summary judgment, the Court afforded Higgs an opportunity to submit evidence and further response. (ECF No. 16.) Plaintiff did not file anything further. Although the Court anticipated the necessity of treating AMPM's motion as one for summary judgment, it became unnecessary to do so upon review of the file.

## *II. Motion to Dismiss for Failure to State a Claim*

### *A. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 1950. As the

2

*Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

## B. Analysis of Rule 12(b)(6) Motion

On its face, the complaint is clearly inadequate to state a claim because it offers no facts from which one can conclude that AMPM discriminated against Higgs. Recognizing that courts have a duty to construe *pro se* pleadings liberally, the Court also considers whether the allegations made in Higgs's response to the motion to dismiss are sufficient to state a claim for relief. But before doing so, it is necessary to dispel a notion advanced by AMPM in its motion to dismiss, and that is, a plaintiff must *allege* facts demonstrating a prima facie case. (Def.'s Mot. Dismiss 2, ECF No. 10.) The Supreme Court has clarified that, to survive a motion to dismiss, a Title VII plaintiff does not have to plead facts that constitute a prima facie case under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 510 (2002) (*McDonnell Douglas* standard "is an evidentiary standard, not a pleading standard"). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* at 511. Thus, the appropriate standard is found in *Iqbal* and *Twombly*, as stated previously.

Higgs has indicated he was subjected to racial slurs, although he does not say who uttered them or when. He also has related three incidents during his employment with AMPM and when he was assigned to Sierra Nevada Corporation.[1] The first incident happened in his first week on the job in June 2008. (Pl.'s Opp. 1, ECF No. 14.) Higgs said he was told by his supervisor, Shane Brewer, to speak to the engineer about the job that Brewer had given Higgs to do. The next day, the foreman, Dave Wade, reproached him for wasting time talking to the engineer, and

---

[1] AMPM indicates in its reply that it supplies "contractors" (presumed by the Court to mean contract employees) to Sierra Nevada, where they are considered temporary employees. They are only on a particular job until the work is completed or the contract expires or is terminated. (Def.'s Reply 1-2, ECF No. 15.)

3

Higgs responded that he was only doing what his supervisor had instructed him to do. Later, the engineer told Higgs that Higgs could not talk to him, and while the engineer was saying this, Wade walked up, confronted the engineer, and fired him. Wade approached Higgs later and asked if Higgs thought Wade was racist, but Higgs replied he had just started his job and did not know Wade well enough to make that kind of judgment. A few days later, Daryl Fry, from Sierra Nevada's human resources ("HR") department asked Higgs to speak to the company's attorney and to tell the attorney that Higgs did not think the company had a problem with racial discrimination. Higgs responded that he did not want to get involved or to speak with the attorney. (*Id.*) Nothing about this incident, as related by Higgs, allows an inference that Higgs or anyone else was discriminated against because of his race.

The second incident occurred in November 2008 and involved Carlos Saravia, Karil (last name unknown), Leonardo Mercado, and Higgs. (*Id.*) Higgs said the other three employees drew some pictures of him. Charles Chapman, AMPM's president, was at the hangar that day, and Higgs went to him about the pictures, which upset Higgs. He and Chapman together went to Sierra Nevada's HR department. As a result of their interaction with HR, Mercado and Karil were both fired. Saravia was not fired. Approximately three or four weeks later, Mercado filed a police report stating Higgs threatened to kill him. Higgs said that was not true. Sometime after that incident, Higgs was moved to a different hangar. (*Id.*)

The Court presumes that the pictures to which Higgs refers are the ones attached to his response in opposition to the motion to dismiss. (*Id.* unnumbered exhibits.) The first has what appears to be a photograph of a man's head superimposed onto another photograph of a man in a crowd of men. The men who are most visible all appear to be African-American. The caption is, "Bravery at its finest." The man in the center of the photograph appears to be holding a bucket of Kentucky Fried Chicken, and across his cap is drawn "Johnson Aviation." The

juxtaposition of an African American and a bucket of chicken may have a racially offensive overtone, depending on context. However, no facts are pleaded that allow the Court to infer context, and the Court will not speculate. The second picture depicts a line drawing of a man, and the Court is willing to infer from the facial features that an image of an African-American is intended. The man is wearing glasses as well as a cap turned backwards, and he has a full beard. His shirt has some writing on it, but the only letters the Court can discern are "AMPM." Next to the drawing are the following words:

>LA " "
>TOMASA
>
>"WANTED"

The Court has no idea what this is supposed to mean. The Court is willing to infer that the drawing is a likeness of the Plaintiff and could be seen as an act of hostility toward him. The third picture has, in the upper right-hand corner, the same headshot that was superimposed onto the first picture and wearing the same drawn-on cap with "Johnson Aviation" across it, but also shows the person displaying his fists as though he were ready to fight. The caption for the picture says, "GIVE ME MY BREA." Perhaps, the last word is meant to be "bread." To the left of the picture in large letters are the following words:

>WANTED
>For Stealing little boys'
>underwear. Last seen
>sniffing little girls bike seats
>in the Philly Area.
>
>Call Authorities immediatelly [sic]
>Very Dangerous with
>Spit Balls

It would be understatement to say that this is crude, and it certainly may be considered offensive to anyone at whom it is directed. However, it is not reasonable to infer that it is racially

5

derogatory. To the extent the pictures were construed by Sierra Nevada as unacceptable, it would seem that the company dealt with the situation by firing two employees. Higgs does not allege sufficient facts to explain why the third person he believes is responsible for the pictures, Carlos Saravia, was not fired; as a result, the Court is not willing to infer that the company's retention of Saravia was discriminatory toward Higgs.

Between the second and third incidents, Higgs said he "had to take off [from work] for a few days" to be with his mother, who was having surgery. (Pl.'s Opp. 1.) When he returned, he was "in a different hangar." (*Id.*) At some point, he was moved from the day shift to the night shift. He has alleged no facts to allow an inference that any of these changes in duty assignments were based upon racial discrimination.

The third incident he described as having occurred in Sierra Nevada's break room on April 20, 2009. (*Id.*) Higgs said two people in addition to him were present: Hernen Perra and Bumaro Aguilar. He then said: "Soon after the incident/argument took place Shane Brewer entered the break room and we all went back to work." (*Id.* 1-2.) The Plaintiff was apparently terminated the next day. Nothing in those facts, nor in Higgs's various attachments, permits an inference of racial discrimination against Higgs.

Higgs has also alleged that he was treated in a hostile manner by other employees and by supervisors after he filed a discrimination claim with the EEOC. But he alleges no facts to allow the Court to infer that his termination was retaliation for his protected activity.

Higgs included in his complaint an allegation of defamation: "Slandering my name as a professional Aircraft Mechanic. Also lied to unemployment to prevent me from collecting." (Compl. 2, ECF No. 1.) These allegations are mere conclusions and are insufficient to state a cause of action for defamation. His response to AMPM's motion to dismiss does not offer any additional facts that would help his complaint survive a motion for failure to state a claim.

*III. Conclusion*

As previously noted, this case can be resolved without reference to AMPM's supporting materials and without treating AMPM's motion as one for summary judgment. The Court concludes that Higgs's complaint and his response to the motion to dismiss, taken together, fail to state a claim upon which relief can be granted. Accordingly, a separate order will be entered dismissing the action.

DATED this 28 day of April, 2011.

BY THE COURT:

James K. Bredar
United States District Judge